MICHAEL LYNN GABRIEL
LAW OFFICE OF MICHAEL LYNN GABRIEL
1903A COOLEY AVE
EAST PALO ALTO, CA 94303
TELEPHONE:  1-650-888-9189
FAX 1-650 ~~560~~-0211
EMAIL: aetal@earthlink.net
ATTORNEY FOR PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN L. LOMBARDO  and <br><br> LIFE FORCE TRUST <br><br> Plaintiffs, <br><br> vs. <br><br> DAVID R. SANCHEZ, MERCANTILE RESOURCE GROUP, INC  and  CHOCTAW INDIAN ASSET RECOVERY TRUST dba CHOCTAW MANAGEMENT  GROUP <br><br> Defendants | Case Number:  **5:20-cv-02153** <br><br> **OPPOSITION TO MOTION TO VACATE   DEFAULT JUDGMENT** |

    Plaintiffs **STEVEN L. LOMBARDO  and LIFE FORCE TRUST**   hereby submit this Opposition to the Motion to Vacate Default Judgment by the Defendants  **DAVID R. SANCHEZ, MERCANTILE  RESOURCE  GROUP,  INC  and  CHOCTAW  INDIAN ASSET RECOVERY TRUST dba CHOCTAW MANAGEMENT  GROUP**  in the above-captioned civil action.

TITLE OF DOCUMENT:  Opposition to Motion to Vacate Default Judgment
Case No:  5:20-cv-02153

PAGE NO 1 OF 17

1. This Opposition is based on the following points and authorities. the declarations of Steven Lombardo previously filed as ECF 43, Clifford Wilkins, the record and file herein, and such other evidence and argument as may be adduced at a hearing on this matter.

## POINTS AND AUTHORITIES
### 1. STATEMENT OF FACTS

2. Plaintiffs' Second Amended complaint alleges that the defendants are liable for Breach of Contract and Breach of Fiduciary Duties.

3. The agent of process for the Defendants was personally served with the summons and complaints on July 15, 2020. Mr, Cliff Wilkins in his capacity as agent for the Defendants executed a declaration filed with the proof of summons stating that he had received such service and forwarded the summons and complaints to the all of the Defendants on July 15, 2020. In addition, the Request for Default and Motion for Default Judgment were also served on the agents of service of process for the Defendant on August 10, 2020 and Mr. Cliff Wilkins in his capacity as agent for the Defendants executed yet another declaration stating that he had received such service and forwarded the Request for Default and Motion for Default Judgment to the all of the Defendants on July 15, 2020. First Declaration of Cliff Wilkins filed in support of the Motion for Default Judgment ECF 42

4. The Defendants failed to appear or otherwise defend in this action within the twenty (21) days the twenty (21) days permitted to answer or file an otherwise responsive pleading.

5. The none of the Defendants are a minor or incompetent person.

6. On August 11, 2020 the Clerk of this Court was requested to enter all of the Defendants' default and default judgment

TITLE OF DOCUMENT:  Opposition to Motion to Vacate Default Judgment
Case No:  5:20-cv-02153

PAGE NO 2 OF 17

7. Judge Nathaniel Cousins ordered the appearance at a video hearing of Cliff Wilkins wherein he was examined by the Court to so as to determine if proper service of the complaint had been made

8   At the hearing, Cliff Wilkins testified and reaffirmed in his answers ti the court that he was the agent for service for all the defendants, that he had received service in that capacity of the summons and complaints and all of the motions thereafter including the motion for default judgment and that he had delivered all of the served documents to the defendants. Mr. Wilkins further stated in his declaration and at the video hearing that he had personally spoken to defendant David Sanchez who confirmed receipt of all of the served documents - especially the amended complaint amd the motions for default judgments.

9   The hearing by the court in which Mr. Wilkins testified was a Zoom conference so it should be readily available to the court to see first hand and evaluate the testimony of Mr. Cliff Wilkins on the issue of the existence of the agency and sufficiency of the service

10. In opposition to the motion filed, Mr Cliff Wilkins has executed an even more detailed declaration than his first one. In his second declaration he goes into great detail stating with examples and confirming emails services he has performed as agent for the defendants. Mr. Wilkins has also enclosed emailed email communications by and between himself and Defendant David Sanchez. Finally in his declaration, Mr. Wilkins attaches in addition to the first one a second Agency Consent agreement executed by the Defendant David Sanchez so as to be sure that Cliff Wilkins was an also agent for service for both for himself and his estate planning trust Choctaw Indian Asset Recovery Trust as well.

11. The defendants are asserting two arguments in their Motion to Vacate

A. Mr. Wilkins is not an agent and that the first agency consent agreement is a forgery

B. That service never took place on Mr. Wilkins

12. Both of the declarations of Mr Cliff Wilkins, prove that the agency agreement existed appointing him the agent for all of the Defendants.

TITLE OF DOCUMENT: Opposition to Motion to Vacate Default Judgment
Case No:  5:20-cv-02153

PAGE NO 3 OF 17

14. The declarations, and especially the second one of Mr. Wilkins go into great detail both explaining and documenting instances which prove that Mr. Wilkins has been acting as the agent for the Defendants for many years.

15. Together the Defendants Mercantile and Choctaw each were served with
1. The original complaint
2. The first Request for Default
3. The First Motion for Default Judgment
4. The Second Request for Default
5. The Second Motion for Default Judgment
6. The Response to the Order to Show Cause
7. This Third Request for Default
8. The Third Motion for Default Judgment

16 Each of these services were made on their agent for service of process Cliff Wilkins. That comes to 16 times that he received service for them, For each service he executed a declaration acknowledging receipt and the forwarding the served documents under penalty of perjury to the defendants

17 In addition to those 16 services, the Defendant David R, Sanchez was served through his agent Cliff Wilkins another three times.

1. The summons and amended complaint'
2. The Third request for Default
3. The Motion for Summary Judgment

18 That means that the Defendant David R. Sanchez has received the services a total of 19 total times and has never bothered to do anything, The Client and Agency Agreement states

"All correspondence and/or mail services by and between Ankins and Client(s) will be forwarded or sent to Client(s) to the address stated below ,,,

CLIENT DAVID R. SANCHEZ

ADDRESS 9676 POPE MANOR WAY, NARETTA, GEORGIA 30063 USA"

TITLE OF DOCUMENT: Opposition to Motion to Vacate Default Judgment
Case No: 5:20-cv-02153

PAGE NO 4 OF 17

19. There can be no finding of excusable neglect when the defendants have been served 19 straight times and yet have never answered and still refuse to do so. This is especially so after being served with the Motion for Default Judgment and not doing anything so that cannot be considered as excusable neglect.

20. Judge Cousins found that the testimony of Mr. Wilkins believable and this Court in its review of the Commissioner's report agreed and issued the default judgment.

21. The defendants have produced no facts to support their unfounded assertions that after many years of being their agent that suddenly the agency relation never existed and that Mr. Wilkins did not serve them and is committing perjury testifying so.

22. Plaintiffs' amended complaint sets forth specific allegations of the Defendant's liability for the restitution of the 82 mortgage bearer bonds along with other written instruments in held by Iron Mountain Intellectual Property Management, Inc hereinafter referred to as Iron Mountain in account number 9183-17646.

23. As stated in the amended complaint and documented by the declaration of Steve Lombardo filed with court in support of the Motion for Default Judgment ECF 43 , one half of the bonds were owned by the Plaintiff Steven Lombardo and one half by the Defendant Daniel Sanchez prior to the formation of defendant Mercantile. After the formation of the Defendant Mercantile all of the bonds were transferred in the Defendant Mercantile pursuant to the agreement ECF 1-1 of the amended complaint that if they were not monetized by Jan 2020 they were to be delivered to the Plaintiff Steven Lombardo as he was paying for the monetization of the bonds.

24. After January 2020 when the Plaintiff Steve Lombardo requested the bonds, it was discovered that the Defendant David Sanchez had transferred all of the corporate assets to wit all

TITLE OF DOCUMENT: Opposition to Motion to Vacate Default Judgment
Case No: 5:20-cv-02153

PAGE NO 5 OF 17

of the bonds to his estate planning trust the defendant Choctaw Indian Asset Recovery Trust including the 50% of the bonds which had been contributed to Mercantile by the Plaintiff.

25    No legal justification has ever been offered by the Defendant David Sanchez explaining the legal basis for taking all of the corporate asset including the Plaintiff's share of the bonds into his own name and hence this lawsuit arose.

## 2. ARGUMENT

26.    Defendants argue that the default judgments should be vacated pursuant to Federal Rule of Civil Procedure Rule 60(b)(1), which allows vacature in cases of "mistake, inadvertence, 4 surprise, or excusable neglect." In evaluating defendants' argument, the Court considers three factors: (1) whether defendants have a meritorious defense; (2) whether the default was the result of defendants' culpable conduct; and (3) whether plaintiffs will be prejudiced. United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). This standard is construed liberally, and any "doubts should be resolved in favor of [a] petition to set aside [a default] judgment so that cases may be decided on their merits." Medunic v. Lederer, 533 F.2d 891, 894 (3d Cir. 1976). Moreover, "the decision to vacate a default judgment is left to the sound discretion of the trial court." Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988).

27.    *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986). the court stated:

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Moore's Federal Practice p 55-05, at 55-24 to 55-26.."

TITLE OF DOCUMENT: Opposition to Motion to Vacate Default Judgment
Case No:  5:20-cv-02153

PAGE NO 6 OF 17

**a. MERITORIOUS DEFENSE DOES NOT EXIST**

28. With respect to the first factor, a defendant must allege specific facts that, if proven, would establish a meritorious defense to the claim asserted; a perfunctory statement that a meritorious defense exists is insufficient. Harad, 839 F.2d at 982; Pennsylvania Nat. Bank, 87 F.R.D. at 155. In this case, defendants have not met their burden.

` 29. The amended complaint in the second cause of action alleges breach of fiduciary duties based upon the embezzlement of the bonds when the defendants took the bonds into their own names .

30. Plaintiff is unaware of any power under American corporate law allowing a director to unilaterally take corporate assets in his own name without notice or explanation either before or after the fact. No notice of the transfer or any corporate meeting by shareholders and directors was held authorizing the transfer of all of the corporate assets to any of the Defendants including Defendant David Sanchez personally.

31. Even assuming for this motion alone, that Agreement ECF 1-1 of the amended complaint was not enforceable that alone would not give the Defendant to take all of the bonds for himself, unilaterally and in secret and without explanation. Corporate law simply does not allow that to occur.

32 If the Agreement ECF 1-1 to the Amended Complaint did not exist, then Defendant David Sanchez might have been able to take ½ of the bonds upon a dissolution and termination of the company as his share of corporate assets on the termination. In that case David Sanchez would own 50% of the bonds but he took all - 100% - of the corporate assets so the taking was not under a termination of the company because the company has not been terminated and is still in existence and also because he took twice the assets than he would be entitled in a dissolution.

33. As the taking was not part of a termination and was more corporate assets were taken than the Defendant David Sanchez would have been entitled in a dissolution then the taking of all of the corporate assets was without justification and is a straight forward embezzlement. That point is moot anyway because agreement ECF 1-1 does exists and is enforceable so the Defendant Sanchez

TITLE OF DOCUMENT: Opposition to Motion to Vacate Default Judgment
Case No: 5:20-cv-02153

PAGE NO 7 OF 17

had no right to take any of the corporate assets much less all of them into his own personal name and doing so is embezzlement of corporate assets.

34. There are no facts presented by the Defendants which would substantiate a meritorious defense to the claim of embezzlement of the corporate assets

35. As it is it is now it is simply guess work as to what the facts are that the defendants would rely upon at trial as a defense. With no facts presented there is no basis for the court to conclude that the defendants have a meritorious defense for the embezzlement. There are a stream of affirmative defenses that are standard legal boilerplate attached to every answer but what are the facts that would raise them to meritorious defenses?

36. Plaintiff cannot prove the existence of a meritorious defense without the presentation of some facts and none have been presented. How can the court find that a meritorious defense exists if it has no facts upon which to base the finding? Defendants have therefore not demonstrated the existence of a meritorious defense for purposes of Rule 60(b)(1) exists for the embezzlement

37. So as there is no meritorious defense for the embezzlement the default judgment must be upheld.

38. As for a meritorious defense for the Breach of Contract Cause of Action once again the Defendants have simply made an unsupported contention which is not backed by any facts. The Defendants are simply making a bald face statement that for the breach of contract that the agreement ECF 1-1 is a forgery with no facts substantiating that statement. How would they prove their contention at trial? What facts do they rely to prove the forgery? Have the defendants had a professional handwriting expert analyze the signatures? What are the facts for the meritorious defense which the defendants must produce in order to have a motion to vacate the default judgment be granted.

39. As no facts have been presented supporting a meritorious defense for the breach of contract, the motion to vacate for it should be denied as well.

TITLE OF DOCUMENT: Opposition to Motion to Vacate Default Judgment
Case No: 5:20-cv-02153

PAGE NO 8 OF 17

## B. DEFENDANTS' MOTION IS UNTIMELY.

40. Defendants file their motion to vacate under Rule 60(b)(4) of the Federal Rules of Civil Procedure. A motion for relief from a judgment pursued under Rule 60(b)(4) must be filed "within a reasonable time." Fed. R. Civ. Pro. 60(c). *Graham v. Sullivan*, No. 86 Civ. 163, 2002 U.S. LEXIS 18240, at *4 (S.D.N.Y. Sept. 23, 2002); *United States v. Dailide,* 316 F.3d 611, 617-18 (6th Cir. 2003); *Gordon v. Monoson,* 2006 U.S. Dist. LEXIS 34183 *7 (D.V.I. 2006); *but see United States v. One Toshiba Color Television,* 213 F.3d 147 (3d Cir. 2000).

41. Defendant made their first appearance and filed their motion yo vacate the default judgment on January 3, 2020. This was done after having been served with ignoring 19 services and the entry of default judgment in October 2020.

42. Moreover, "[i]n considering Rule 60(b) motions, courts have been unyielding in requiring that a party show good reason for . . . failure to take appropriate action sooner." *United States v. Martin*, 395 F. Supp. 954, 961 (S.D.N.Y. 1975). Courts must "balance the interest in finality with the reasons for the delay." *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983); *Freedom N.Y., Inc. v. United States*, 438 F. Supp. 2D 457 (S.D.N.Y. 2006). Rule 60(b) motions should be denied where a defendant fails to "provide any justification for their own failure to take action after receiving notice that the clerk had entered a default against them." *New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2006).

43. Defendant David Sanchez is a sophisticated individual as is demonstrated from the record and the pleadings made in this case. Yet, Defendant Sanchez does not provide a good reason for failure to take appropriate action sooner. Instead makes the fabricated, wild and unsupported statement that Cliff Wilkins was not his agent despite the existence of not one but two agency agreements and all of the documentation presented by Cliff Wilkins showing what he has doing as agent for the Defendants.

44. The defendant asks this Court, pursuant to Federal Rules of Civil Procedure Rule 55(c), to "set aside an entry of default for good cause" and to set aside the default judgment for "excusable neglect" under Rule 60(b)(1). For setting aside the default, "[g]ood cause is a mutable standard, varying from situation to situation." *Compania Interamericana Export-Import, S.A. v.*

*Compania Dominicana,* 88 F.3d 948, 951 (11th Cir. 1996). "For all practical purposes, good cause and excusable neglect are treated alike under the excusable neglect standard of FRCP 60(b)." *Id.* Consequently, for setting aside the default judgment, the movant must show a lack of prejudice, a meritorious defense, and a good reason for not responding to the complaint. *In re Worldwide Web Sys., Inc.,* 328 F.3d 1291, 1297 (11th Cir.2003).

### C. THE DEFENDANTS CANNOT SHOW GOOD CAUSE OR EXCUSABLE NEGLECT

45. The defendants have failed to articulate a reason why the neglect for not responding to the dozens of services made upon them should be considered good cause or excusable neglect. The Supreme Court has held the excusable neglect "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Services Co.* v. *Brunswick Associates Ltd. Partn.,* 507 U.S. 380, 395 (1993). Here, the defendants seem to be saying that their agent did not deliver the legal documents to them.

46. Under FRCP 4, service on an agent is good service on the principal. There is no additional requirement that the plaintiff actually prove that the agent who was appointed by the principal actually fulfilled his fiduciary duty and delivered the documents.

47. To do rewrite FRCP4 to add that requirement makes service on an agent worthless because principal could simply claim service was not a forwarded and thus not made.

48. The circumstances of the service were covered by Mr. Wilkins first declaration and reaffirmed in the video hearing through the examination conducted by Judge Cousins and has now even been expanded upon in his second declaration.

49. Mr Wilkins' in his second declaration has clearly set a foundation as solid as cement that the agency existed and that is shown to exist by past dealings on behalf of the Defendants.

50. Plaintiff does not have to prove the subsequent delivery by the defendants' agent to them but he has done so anyway. Mr. Wilkins has documented in all of his declarations that he forwarded the documents to the last known address of the Defendant David Sanchez. Furthermore,

Mr. Wilkins' he verified their receipt in a phone call with the Defendant David Sanchez and testified to such under examination by Judge Cousins.

51. As such the services were properly made and the defendants have no defense except to accuse their long time agent of many years with forgery, perjury and as the mails were involved with transmission of the served documents conduct which would be RICO violations as well.

52. What the defendants have not offered the court is a reason and facts supporting it as to why Mr Wilkins would forge documents, commit perjury and lie under oath before a federal judge, when he is a not a party and without any financial or personal incentive to do so.

### D. EXISTENCE OF AGENCY BY AGREEMENT

53. There are actually not one but two separate agency agreements with Mr. Wilkins from the Defendant David Sanchez. The first was filed with court as part of ECF 41 for the motion for default and the second is filed herewith as the subexhibit 11 to Mr. Wilkins declaration filed in support of this motion. The second agency agreement Exhibit 1 was given to Mr. Wilkins by the Defendant David Sanchez for himself and his estate planning trust Choctaw Indian Asset Recovery Trust

54. So Mr. Wilkins actually has two agency agreements appointing him agent for service of process for the Defendant David Sanchez individually and also appointing him as agent for service for Defendants Mercantile Resource Group and Choctaw Indian Asset Recovery Trust the estate planning trust of the Defendant David Sanchez.

### E. EXISTENCE OF AGENCY BY ESTOPPEL

55. Plaintiff believe that they have proven that Clifford Wilkins was both the designated agent of service and that service was properly made on the defendants in that capacity. However even if there was not actual authority for Mr. Wilkins to serve as agent, there was an agency by estoppel to do so by the ongoing conduct of the Defendant Davis Sanchez with Mr. Wilkins which created the reasonable belief that such agency for service existed.

56. In the case of Pasadena Medi-Center Associates v. Superior Court, 9 Cal.3d 773, 108 Cal.Rptr. 828, 511 P.2d 1180 (1973), the California supreme court upheld an agency of estoppel for the service when the conduct of the defendant was such that a reasonable belief that the agency for service existed. The court stated

> " The principle of Oro Navigation, which rests upon the perennial proscription that one should not profit from his own wrong, applies forcefully here. Defendant corporation, having misled plaintiff, bears the responsibility for plaintiff's failure to serve an authorized corporate officer, and should [9 Cal.3d 783] not be permitted to strip itself of assets in order to avoid the payment of an uncontested judgment. **If the rule were otherwise we would make of process "a special preserve in which deception pays, and technical precision prevails over substantial justice."** (Tresway Aero, Inc. v. Superior Court (1971) 5 Cal.3d 431, 440 [96 Cal.Rptr. 571, 487 P.2d 1211].) We conclude therefore, that plaintiff, by serving Binney, Sr., a corporate agent with ostensible authority to receive process, effected valid service upon the defendants. The writ of certiorari and peremptory writ of mandate are denied, and the alternative writ of mandate is discharged.'

57. The declaration of Cliff Wilkins' is 28 pages long with detailed description of what he has been doing over the years as agent for the Defendants. Now the Defendants are claiming without any facts or proof that he had no authority to do anything and expect to be believed?

58. Mr. Wilkins has sworn under penalty of perjury every singe time that that he made a declaration that

1. The was the agent;

2. That he accepted the service and

3. That he delivered the documents to the defendant David Sanchez.

59. Mr. Wilkins also testified under oath to the same before the hearing conducted by Judge Cousins. He now repeats that testimony again again through his detailed declaration.

60. The defendants' defense is a simply statement of alleged criminal activity alleging perjury, forgery and possibly RICO against Mr. Wilkins. In contrast Mr. Wilkins has documented in his declarations a rather large involvement in the business affairs of the defendant David Sanchez and thus support the agency. Mr. Wilkins shows the intricate relationship of an agent when he states in his Declaration:

> "1. I formed the Corporation Mercantile Resource Group Inc. on behalf of Mr. Sanchez and Mr. Lombardo, and acted as Agent of "Process of Service." All entities formed and registered in Nevis require an "Agent of Process of Service" also known as a Registered Agent."

If Mr. Wilkins is not the agent then who is the identified agent? This should be stated as a meritorious defense showing that Mr. Wilkins is not the agent of service recognized by Nevis.

61. Mr. Wilkins shows again the intricate relationship of an agent when he states in his Declaration:
> "9. I was listed as the contact on the deposit receipt for Iron Mountain whereby the bonds were deposited and held for safe keeping since 2002. I was also listed as the contact on the US Government Copyright office."
>
> See exhibit # 2, Iron MTN deposit receipt and copyright registration.

Once again another statement that Mr. Wilkins is an agent made to a third party to wit Iron Mountain the depository of the bonds as the contact person ie agent

62. Mr. Wilkins continues to show the intricate relationship of an agent when he states in his Declaration:
> "10. I decided to leave employment with ATL and go off on my own, but continued to assist David Sanchez and Mr. Lombardo in different capacities. One responsibility as "Agent of Process of Service:" and a second, as a contact person for the Corporation in regards to the Iron Mountain account.
>
> See exhibit #10 sub exh16 – Exh #11 Agent of service agreement, #2 Iron MTN deposit

TITLE OF DOCUMENT: Opposition to Motion to Vacate Default Judgment
Case No: 5:20-cv-02153

PAGE NO 13 OF 17

    15.     Mr. Lombardo asked if I were still the acting, "Agent of Process of Service", and if I still had the current address for David Sanchez. I said yes, I was still the Agent and verified his current contact information for him personally, for the Trusts, Mercantile, and the Iron Mountain accounts. See Exhibit #11 "

Again the second agency agreement from David Sanchez extends the agency to Choctaw Indian Asset Recovery Trust as well as David Sanchez individually

    63.     Mr. Wilkins explains that he reluctantly accepted the service for the defendants in his Declaration:

    '16.     Mr. Lombardo later informed me he was going to file a lawsuit against the Corporation and the Trust of David Sanchez, (Choctaw Indian Asset Recovery Trust), for the theft of the Railroad bonds. He requested I serve David and the corporations as required. I was hesitant, but I was required to comply.

    17.     Upon receiving the Complaint and subsequent documents, I served them by mail to the last known address of: 2575 Pope Manor Way, Marietta Ga. 30062
See Exhibit, #11

    18.     I provided a declaration to the court, and was requested by the Federal Court to make an appearance by video conference. I appeared as requested."

    64.     All of the above creates a most detailed agency relationship with the defendants that would exists even if the agency documents did not exist but they do exist.

    65.     Plaintiffs have established each of the above required conditions necessary for a denial of the motion to vacate by a close reading of Mr. Wilkins' declaration . As presented in this Opposition and the accompanying affidavit of Clifford Wilkins, the Defendants were properly served with the summons, second amended complaint on July 15, 2020 and the request for default and the motion for default judgment on August 10, 2020 and have failed to appear or otherwise defend this action within the 21 days for the defendants' answer or other responsive pleading.

    66.     None of the defendant despite being served total of 19 times in this action came forward seeking to stop the entry of default or the granting of the motion for default

TITLE OF DOCUMENT: Opposition to Motion to Vacate Default Judgment
Case No: 5:20-cv-02153

PAGE NO 14 OF 17

judgment. The Plaintiffs do not see how the action or inaction of the Defendants can be considered excusable neglect. There are no facts present upon which the Court could find that constitute excusable neglect. What we know is that the Defendants were served and have not answered or appeared,

67. If there is a basis for excusable neglect sufficient to set aside a default judgment then the defendants must present it. They have not come forward to do so. The argument that the consent agreement is a forgery and that Mr. Wilkins did not serve the documents is unsupported because it did not happen.

## CONCLUSION

68. For the foregoing reasons, plaintiffs respectfully request that the Court enter an order denying the Defendants' Motion to Vacate

**69.** The three principal factors to guide the decision on whether to vacate a default judgment pursuant to the provisions of Rule 60(b): "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice.'" *Green*, 420 F.3d at 108. Here, each of these factors unequivocally demonstrates that Defendants' motion to vacate lacks merit.

### A. Defendants' Default was Willful.

70. Where a defendant is properly served, default is willful where "the conduct of counsel or litigant was egregious and was not adequately explained." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). Conduct is not adequately explained where "neither the memorandum nor . . . affidavit gave any indication that [d]efendant had done anything whatsoever to prevent the default's occurrence." *Id.* at 740; *see also Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf,* No. 05 Civ. 10098, 2007 U.S. Dist. LEXIS 16486, at 10 (S.D.N.Y. 2007) (dismissal proper where defendant "ignored the summons and complaint for over seven months without satisfactory explanation"). Not answering after being served 19 times should be enough to prove

TITLE OF DOCUMENT:  Opposition to Motion to Vacate Default Judgment
**Case No:  5:20-cv-02153**

PAGE NO 15 OF 17

that the default was willful and that the motion to vacate was untimely.

### B. The Defendants Cannot Show a Meritorious Defense

71. The Defendants have not sufficiently alleged a meritorious defense to support relief from the judgment. The Defendants raise multiple contentions as affirmative defenses in support of its motion to vacate and set aside the default and default judgment but give no facts in support on any of them.   Nothing has been offered as away of fact that the Agency Agreement was forged or that Mr. Wilkins was not the agent or that he was not served on behalf of the defendants. .

72. Likewise no evidence  or facts have been produce by the defendants that the taking of the bonds was not embezzlement. There simply is no corporate law  that would justify what the defendants did in taking the corporate assets in such a secret unilateral action and without notice.  Without such facts proving a meritorious defense  the default judgment as to that second cause of action for breach of fiduciary duty as a result of the embezzlement  must be upheld.

73. As to the meritorious defense of the breach of contract again no facts are produced except gpt a bald face statement that it a forgery with nothing more. The defendants have had the complaint  before for  close to  a year from the first service  and in all that time they have done nothing to find   facts supporting their   bald faced unsupported contention of  of a forgery.

74. The same allegation of forgery is made against Mr. Wilkins' declaration and testimony also with no supporting facts.  What facts do the defendants offer to the Court to prove these unfounded contentions?  No facts are alleged in their motion to show his declarations and testimony are false. At the  hearing on the motion for default judgment Judge Cousins acted in essence as the attorney for the defendants when he examined Mr. Wilkins on the service and his declaration. Judge Cousins as shown by his taped examination asked the questions which the defendants would be asking and the elicited answers convinced him that perjury had not been

committed and that proper service on Mr. Wilkins as agent for service for the defendants had been made. That examination is still evidence in the court as it was video taped..

### C.  Vacating the Default Would Prejudice Plaintiffs.

75. Plaintiffs have invested time and effort, at great emotional and personal risk, into the timely litigation of their claims against Defendants. Plaintiffs deserve finality after diligently pursuing their claims.

76. Second, enormous effort, including many attorney hours and expense on the part of the Plaintiffs, went into the litigation of this case. Vacating this judgment would mean all this effort would have to be duplicated.

77. No facts or justification have been presented by the Defendants as to why they took possession of the bonds ie the corporate assets and are not liable for embezzlement of corporate assets. The defendants' silence thereto can only be assumed to be an admission of liability because in order to prevail on their motion to vacate they must provide such facts and justification to prove a meritorious defense.

78. In the absence of a meritorious defense the motion to vacate the default judgment on the second cause of action ie on the embezzlement must be denied just as it should be for the breach of contract for the same reason lack of facts supporting a meritorious defense.

79. The bonds are bearer bonds and the defendants fail to protect them they can be lost or destroyed without an effective remedy to recover their value. So the motion to vacate should be denied so the bonds can be delivered pursuant to both the court's judgment and injunction.

Dated January 26, 2021

**LAW OFFICE OF MICHAEL LYNN GABRIEL**

**by: /s/ Michael Lynn Gabriel  CA Bar No. 86924**
MICHAEL LYNN GABRIEL
1903A COOLEY AVE
EAST PALO ALTO, CA 94303
TELEPHONE:  1-650-888-9189
FAX   1-650 560-0211
EMAIL: aetal@earthlink.net

TITLE OF DOCUMENT:  Opposition to Motion to Vacate Default Judgment
Case No:  5:20-cv-02153

PAGE NO 17 OF 17